ON REHEARING
BOWEN, Judge.
In 1970 Pace’s appeal of his conviction for robbery was dismissed when he escaped from the penitentiary pending his appeal. Pace v. State, 45 Ala.App. 390, 231 So.2d 166 (1970). Three years later Pace filed a petition for writ of error coram nobis claiming that he was imprisoned in the city jail of Scottsboro, Alabama, on June 29, 1968, at which time the alleged robbery occurred for which he stands convicted. The trial court dismissed this petition on motion of the State without a hearing. On appeal from that dismissal, this court reversed and remanded finding that Pace was entitled to an evidentiary hearing. Pace v. State, 357 So.2d 384 (Ala.Cr.App.), cert. denied, 357 So.2d 386 (Ala.1978).
Such a hearing was held and Pace was represented by experienced and able counsel. After hearing all the testimony and reviewing the evidence the court found that Pace “has failed to establish facts to warrant setting aside his judgment of conviction” and denied the petition for writ of error coram nobis. This denial was affirmed without published opinion by this court on March 27, 1979. This opinion is in response to Pace’s motion under Rule 39(k), Alabama Rules of Appellate Procedure, in his application for rehearing.
The robbery was committed on July 29, 1968. In support of his contention that he was in the Scottsboro City Jail at this time Pace presented a number of exhibits.
1. A federal detainer from the United States Marshal’s Office in Birmingham, Alabama, issued June 28, 1968, directed to the Scottsboro City Police stating that Pace “is reported to be in your custody”.
2. A Jackson County arrest warrant showing that Pace was arrested on July 2, 1968, and committed to jail. On the face of the warrant is typed “Booked in City Jail, 6/24/68 (1) Carrying Concealed Weapon; (2) Suspicion of Federal Parole Violation”.
The trial court found that other than this notation, “there is no record indicating *1283 petitioner to have been in jail in June of 1968”. Considering all the evidence the court found that this notation was “an unauthorized alteration of a copy of the original warrant”.
3. A writ of arrest from Jackson County showing that Pace was in jail on July 19, 1968.
4. A letter from the Circuit Clerk of Jackson County dated December 30,1976, certifying credit for presentence jail time of 7 months and 27 days.
A. The records of a federal writ of ha-beas corpus filed by Pace — including the “Recommendation of the Magistrate” which states, “While on parole, on June 24, 1968, the petitioner was arrested in Scottsboro, Alabama, on a charge of carrying a concealed weapon. He was then under investigation by state authorities for two armed robberies. A detainer as a federal parole violator was lodged against the petitioner with the Scottsboro City Police Department by the United States Marshal for the Northern District of Alabama.”
B. Documents from the United States Parole Commission. These records show that Pace was arrested on July 2, 1968, in Scottsboro for robbery and that a detain-er was placed with the Jackson County Sheriff for Pace on July 25, 1968.
At his hearing, Pace called the Chief of the Scottsboro City Police who testified that on July 2, 1968, Pace was brought into the City Jail and also transferred to the County Jail that same date. The Chief further stated that:
“If Mr. Pace had been confined in the Scottsboro City Jail prior to this date here or any other time after that then there would have been a docket sheet in his file, and the only one that we have in his file is July 2, 1968.” (Emphasis added)
The Jackson County Sheriff confirmed that Pace was placed in the county jail on July 2, 1968, and charged with armed robbery and grand larceny. He stated that to the best of his knowledge and recollection Pace was not in the county jail on June 29, 1968.
In conclusion the record supports the finding of the lower court that there was no record presented which shows that Pace was incarcerated on June 29, 1968, as alleged.
 In a coram nobis proceeding the petitioner bears the burden of submitting clear, full, and satisfactory proof. “This burden extends beyond a mere balancing of probabilities to clearly and convincingly satisfy the court . . . .” Summers v. State, 366 So.2d 336, 343 (Ala.Cr.App.1978), cert. denied, 366 So.2d 346 (Ala.1979). The record supports the trial judge’s conclusion that “the petitioner has failed to establish facts to warrant setting aside the judgment of conviction”. The evidence in this case is neither clear nor convincing that Pace was in jail on June 29, 1968.
II
At the coram nobis hearing the trial court refused to allow Pace to present evidence concerning his court-appointed trial counsel’s alleged ineffective representation at his original trial. In his petition Pace charged that trial counsel, Hubert H. (Hub) Wright, was reluctant and negligent in representing him. These allegations apparently stem from the fact that during co-defendant Duncan’s trial the indictment was amended with Duncan’s consent.
In Duncan’s trial, Wright introduced a record from the probate office showing that the grocery store robbed was actually Sa-vette’s Food Store and not Savette’s Food Store, Inc. as charged in both the indictment against Pace and the one against Duncan. In Pace’s trial all the evidence was that the name of the corporation was Savette’s Food Store, Inc.
At neither Pace’s nor Duncan’s trial was the existence of any corporation denied by sworn plea as required by Section 12-21 — 201, Code of Alabama 1975, which was then effective as Title 15, Section 315, Code of Alabama 1940. Without such a plea evidence disputing the existence of an alleged corporation is inadmissible. Dennis v. State, 16 Ala.App. 115, 75 So. 707 (1917).
*1284 Additionally Wright did move “to exclude the evidence and discharge the defendant on the ground that there is a fatal variance between the pleading and proof” after Jim Livingston, the store manager, testified that he did not know whether the stolen money belonged to “Charles Todd or the corporation”. After repeated examination by both sides on this matter, Livingston finally testified that he was mistaken when he made this statement, that Todd was an officer of the corporation, and that the money belonged to the corporation. Under these circumstances the trial judge properly overruled defense counsel’s motion to exclude. Also I do not think that the failure to properly contest the existence of the corporation which “owned” the money which was stolen in the grocery store robbery amounts to incompetence of counsel.
We have read Pace’s original trial record and found no evidence that trial counsel was incompetent although there were no pretrial motions, no motion for a new trial and no defense was presented. Counsel Wright did conduct a sifting cross examination of the State’s two witnesses, made numerous objections, motions to exclude, and did file written requested charges.
While the jury was deliberating counsel Wright stated “for the record” that, “I fully advised him (Pace) on more than one occasion in the jail to all of his constitutional rights, that he had, of course, the right to a trial and have the witnesses brought before him, the right to plead guilty or not guilty, the right to a jury trial and the right to testify or not to testify and the same could not be held against him . . .” The jury found Pace guilty and sentenced him to fifteen years’ imprisonment for a crime which then earned a sentence of from ten years to death. Duncan’s defense for the same robbery was insanity and he received a ten year sentence.
Although Pace was not allowed to offer evidence on Wright’s alleged incompetency, at the coram nobis hearing Attorney Wright testified that he could not locate his “old file” and that he recalled “something about the possibility of an alibi witness, a sister or sister-in-law somewhere in North Alabama . . . something about that he (Pace) might have been in North Alabama at the time it happened”. Wright discussed the case with the District Attorney, saw the D.A.’s file, and received an offer of ten years if Pace would plead guilty. Rowan Bone helped Wright strike the jury. When Wright represented Pace he had been practicing sixteen years which involved more criminal than civil practice. Wright testified, and Pace’s trial record supports the fact, that one of the State’s witnesses positively identified Pace and Wright was unable to “shake” him under thorough cross examination. The evidence is undisputed, as Pace testified, that Pace “most certainly did not” mention to Wright anything about having been in jail at the time of the robbery. Pace stated that he did not become aware of this fact himself until “I had records served on me by the U.S. Parole Officer in Federal Penitentiary in Atlanta, Georgia, in 1970”.
Challenges based on inadequacy of counsel constitute grounds for coram nobis. Summers, 366 So.2d at 341. However, it is somewhat contradictory that Pace should charge his own appointed counsel with negligence in preparing his defense when Pace himself was “totally unaware” (as he testified) that he was (allegedly) in jail in another county when the robbery occurred. This alibi Pace only discovered two years after his trial. Although Pace’s trial was held only 4 months and 5 days after the robbery was committed, Pace’s explanation as to why this defense wasn’t discovered is basically that he simply did not realize or remember that he was in jail at that time.
For these reasons the trial judge did not err in refusing to permit Pace to prove the alleged incompetence of counsel.' It should be noted that the same judge (Hon. James B. Waid) who tried Pace for robbery in 1968 conducted and decided this coram nobis proceeding.
Ill
Finally Pace alleges that the trial judge, at the coram nobis hearing, erred by not *1285 allowing him to present evidence on the possibility of a tainted pretrial identification process.
Two witnesses testified for the prosecution at Pace’s trial. Jim Livingston, the store manager, testified that he was robbed by two men. However he could not identify Pace as one of the two robbers. Seventeen year old Wilmer Campbell, a store employee, positively identified Pace.
Pace’s trial record shows that Wilmer did see Pace in the courthouse hall the day of the trial after he had been told by an investigator to see if he recognized Pace. However Campbell specifically denies that he viewed any lineup, showup, saw any picture of Pace or that anyone pointed out Pace to him. Campbell’s testimony indicates that the investigator told him to see if he could recognize Pace in the courthouse but did not tell him where Pace was or describe Pace to Campbell. In short the evidence shows that there was no tainted pretrial identification procedure and furthermore that the only witness to identify Pace had an independent basis for his identification.
We have searched Pace’s trial record and found no reversible error. The judgment of the trial court is affirmed and appellant’s application for rehearing is overruled.
APPLICATION FOR REHEARING OVERRULED.
HARRIS, P. J., and DeCARLO .and BOOKOUT, JJ., concur.
TYSON, J., concurs specially.